DEMETRIA KAUFMAN                                                    PLAINTIFF

v.

GENERAL ELECTRIC COMPANY                                            DEFENDANT

## Memorandum Opinion

This matter is before the Court upon Defendant General Electric Company's (GE) motion for summary judgment. [DN 13.] Plaintiff Demetria Kaufman responded, [DN 18], and GE replied, [DN 19]. Fully briefed, this matter is ripe for adjudication. For the following reasons, GE's motion is GRANTED.

## I. Facts and Procedural History

Demetria Kaufman was hired by GE on April 13, 2012. [DN 18-1 at 116.] Part of a mass hire, Kaufman was tasked with working on the assembly line that produced GE's new model of refrigerator and freezer. [*Id.* at 97.] Like all other new GE employees, Kaufman was initially placed on a six-month probationary period. [*Id.* at 103.] Kaufman acknowledges that during their first six months on the job, GE employees are expected to abide by GE's rules, including its attendance policies. [*Id.* at 102-103.] Kaufman, an African-American, was terminated at the end of her probation because she did "not provide[] satisfactory reasons or documentation for [her] absences." [DN 18-7 at 1.] In this suit, Kaufman alleges GE retained several Caucasian probationary employees with similar attendance records. *See* [DN 1-2.]

All told, Kaufman had attendance issues on seven different occasions during her time at GE. The first occurred on April 28, 2012, a Saturday. Kaufman was scheduled to work a mandatory overtime shift. [DN 18-1 at 186.] She called in at 6:00 a.m., telling her supervisor, Sharon Lashinsky, her ankles were swollen. [*Id.* at 185, 249; DN 18-3 at 1.] Kaufman missed her entire eight hour shift. [DN 18-2 at 1.]

Kaufman also missed the next regular workday, Monday, April 30. [*Id.*] That day, she went to the chiropractor and the dentist, providing GE with documentation for both visits. [DN 18-2 at 1.]

Kaufman's next attendance issue occurred on Saturday, July 21. GE's records reflect that Kaufman clocked out twelve minutes before the rest of her department. [*Id.*] Kaufman admits she left early, but explains on that particular day, she was assigned to work a different assembly line than she normally worked. [DN 18-1 at 194.] According to Kaufman, the entire assembly line was dismissed early, so she left with them. [*Id.*]

On Wednesday, September 5, Kaufman was late to work. GE claims Kaufman was nine minutes late; however, its gate scans reflect that she arrived at 6:04 a.m., four minutes after her shift was scheduled to begin. [DN 18-2 at 1.]

Kaufman next missed work on Tuesday, September 11. Gate scans show, and Kaufman admits, she left work approximately four hours early. [*Id.*; DN 18-1 at 212-14.] During her deposition, Kaufman could not recall the reason for her early departure, but says she most likely left to attend her personal bankruptcy

proceedings. [DN 18-1 at 213-15.] She testified that she provided HR a letter regarding those proceedings and received permission to attend. [*Id.* at 214-15.] However, no evidence of record supports this testimony.

Two days later, on Thursday, September 13, Kaufman missed her entire shift. [DN 18-2 at 1.] Kaufman testified that she called in prior to her shift, [DN 18-1 at 231-33], but GE's records document her September 13 absence as a "No Call, No Show," [DN 18-2 at 1].

Finally, on Tuesday, September 25, Kaufman missed a full day of work. [DN 18-2 at 1.] Kaufman called in sick to her supervisor, but did not provide a note. [DN 18-2 at 1; DN 18-6 at 1.]

In sum, during her six-month probation, Kaufman missed approximately 4.5 days, or thirty-six hours, of work. Kaufman does not dispute this calculation, and she admits that as a probationary employee, she was expected to have no absences. [DN 18-1 at 103, 174.] However, Kaufman alleges that three Caucasian employees, hired around the same time, missed a similar or greater amount of work, but were not terminated. The first employee is Nicole Turner, hired on April 5, 2012. [DN 18-12 at 1.] Like Kaufman, Turner worked on a production line. [DN 18-1 at 154-55.] Kaufman testified that shortly after her termination, "Theresa," a Team Lead at GE, called her.[1] [*Id.* at 156.] Theresa told Kaufman that Nicole Turner had an 8% rate of absenteeism during her first six months, but GE extended her probation. [*Id.* at 273.] Kaufman's rate of absenteeism during her probationary period was only 4.2%. [*Id.* at 236, 238.]

---

[1] Neither party has identified "Theresa" by her full name.

The second employee is Melissa Reece. She, like Turner, was hired on April 5, 2012. [DN 18-10 at 1.] Pointing to attendance records GE provided during discovery, Kaufman claims that Reece missed a total of 68.2 hours of work from April 2012 to June 2012. *See* [DN 18-13 at 1.] However, Jonathon Lewis, GE's Union Relations Manager, explains that Kaufman's calculation incorrectly includes "uncontrollable absence" hours, when the factory was closed for holidays or lack of work. [DN 20 at 2.] Lewis says Reece missed a total of twenty-one hours during her probationary period, all of which were documented. [*Id.*] In any event, Reece's probation was extended for one month, and she was kept on after her probation concluded. [DN 18-10 at 1; *see* DN 18-14.]

Kaufman's final potential comparator is Stephanie Roby. Roby was part of the April 5, 2012 hire group, and worked on the same production line as Kaufman. [DN 18-11 at 1; DN 18-1 at 155.] Roby missed 21.2 hours during her probationary period. [DN 18-16 at 1.] At the end of her probationary period, Roby received a letter identical to the one received by Reece, extending her probation by one month. [DN 18-11 at 1.] GE says Roby's absences were all documented, and some were excused. [DN 20 at 4-5.] Roby was kept on at GE following her extended probation. *See* [DN 18-13.]

In this suit, Kaufman claims that by terminating her employment but extending the probationary period for Turner, Reece, and Roby, GE engaged in unlawful race discrimination. *See* [DN 1-2.] GE moves for summary judgment, arguing that Kaufman was unqualified for her position at GE by virtue of her

absences, that Turner, Reece, and Roby are not similarly situated to Kaufman, and that GE terminated Kaufman for a legitimate, non-discriminatory reason. *See* [DN 13-1.] Kaufman responded, [DN 18], and GE replied, [DN 19]. Fully briefed, GE's motion is ripe for adjudication.

## II. Standard of Review

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52). As the party moving for summary judgment, GE must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Kaufman's claim. Fed. R. Civ. P. 56(c); see *Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Assuming GE satisfies its burden of production, Kaufman "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## III. Discussion

Kaufman's sole claim is for unlawful race discrimination. She alleges that as an African-American probationary employee, she was treated less favorably than Caucasian probationary employees who engaged in similar conduct. In the absence of direct evidence of discrimination, a claim of disparate treatment is subject to the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden initially lies with the plaintiff to establish a *prima facie* case of disparate treatment. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. Assuming it does so, the burden shifts back to the plaintiff to demonstrate the defendant's proffered reason is merely pretext for unlawful discrimination. *Hollins v. Atl. Co.*, 188 F.3d 652, 658 (6th Cir. 1999).

To establish her *prima facie* case, Kaufman must show that she was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than similarly situated nonminority employees." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016) (citation omitted). The parties agree that Kaufman, an African-American, is a member of a protected class,

and that she was terminated – the prototypical adverse action. However, they dispute the final two elements of Kaufman's *prima facie* case. The Court will address each in turn.

## A. Kaufman's Qualifications

First, GE argues that Kaufman was not qualified for her position because she "did not meet GE's expectations with respect to attendance." [DN 13-1 at 9.] In response, Kaufman points out that "[n]othing in the record indicates that [she] lacked the ability to perform the essential functions of her position," noting that she received generally satisfactory remarks during the interview process. [DN 18 at 6.]

"In order to be 'qualified' for her position, [the plaintiff] must demonstrate that she was meeting her employer's legitimate expectations and was performing to her employer's satisfaction." *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 729 (6th Cir. 1999). GE contends Kaufman was unqualified because she failed to meet GE's legitimate attendance expectations. But this is the very same justification GE offers as its legitimate, non-discriminatory reason for terminating Kaufman at the end of her probationary period. The Sixth Circuit held in *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000), that "when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." Stated otherwise, "[a] court must evaluate whether a plaintiff established [her] qualifications independent of the employer's proffered

nondiscriminatory reasons for discharge." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir. 2002) (citing *Cline*, 206 F.3d at 660-61). Based upon this precedent, because GE relies upon Kaufman's poor attendance record as its reason for terminating her employment, the Court may not consider Kaufman's attendance in determining whether she was qualified for her position. *See Sokolnicki v. Cingular Wireless, LLC*, 331 F. App'x 362, 367 (6th Cir. 2009) (district court erred by using policy violations relied upon by the defendant as its reason for discharging the plaintiff to evaluate whether she was qualified).

Aside from her attendance, GE presents no reason why Kaufman was unqualified for her position as an assembly line worker, nor does the record contain such a suggestion. Kaufman has met her burden on the third element of her *prima facie* case.

### B. Similarly-Situated Employees

To establish the final element of her *prima facie* case, Kaufman must show that she was either "replaced by a person outside the protected class or treated differently than similarly situated nonminority employees." *Tennial*, 840 F.3d at 303 (6th Cir. 2016). Because GE replaced Kaufman with another African-American employee, *see* [DN 13-9 at 3], she must pursue her claim under the latter theory.

However, this case is somewhat unique. GE contends Kaufman was not similarly situated to Turner, Reece, or Roby because of her poor attendance – the same reason it offers as its legitimate, non-discriminatory reason for Kaufman's

termination. If Kaufman establishes her *prima facie* case, the burden will shift to GE to demonstrate its firing of Kaufman was non-discriminatory. Assuming GE does so, the burden will shift back to Kaufman to show GE's proffered justification is pretextual. One way Kaufman may prove pretext is by presenting "proof that [GE] treated similarly situated Caucasian employees differently when they engaged in acts of comparable seriousness." *Tennial*, 840 F.3d at 303 (quoting *McDonnell Douglas*, 411 U.S. at 804)

The problem here is apparent. If the Court concludes Kaufman was similarly situated to her fellow employees at the *prima facie* stage, it seems like it would also be compelled to conclude that Kaufman has shown her termination was pretextual. This is because both inquiries may be satisfied by showing the same evidence. However, the Sixth Circuit "caution[s] against conflating the fourth prong of the prima facie case—comparison to similarly situated individuals—with the subsequent inquiry regarding whether the employer's proffered justification for the adverse job action is pretextual." *Elgabi v. Toledo Area Reg'l Transit Auth.*, 228 F. App'x 537, 541 n.2 (6th Cir. 2007) (citing *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005)). The court in *Elgabi* went on to say that "[w]here the challenged decision is disciplinary in nature . . . the concern of conflating the steps of *McDonnell Douglas* analysis are met so long as there are clear distinctions in the conduct of the employees in question." *Id.*

Other courts have addressed this same conundrum. Some treat the fourth element of the plaintiff's *prima facie* case identically to the second element, and

totally disregard the defendant's proffered non-discriminatory reason for its adverse action when determining whether the plaintiff and the comparators were similarly situated. *See, e.g.*, *Bronski v. Northwest Airlines, Inc.*, No. 01-2394-MA, 2003 WL 21010322, at *4 n.1 (W.D. Tenn. Feb. 28, 2003). Yet others, like the court in *Bush v. American Honda Motor Co., Inc.*, 227 F. Supp. 2d 780, 792-93 (S.D. Ohio 2002), hold that when the plaintiff does not contest the underlying factual basis of the employer's allegations against her, the employer's reason for discharge may be considered at the *prima facie* stage. This Court believes the latter approach is the correct one, because as the *Bush* court recognized, "the case law of the Sixth Circuit demonstrates that the differences between the alleged conduct of the plaintiff and that of other employees may be considered at the prima facie stage," at least when "the plaintiff does not draw the underlying facts into dispute." *Id.*

Here, Kaufman does not seriously dispute the veracity of GE's claim that she missed about thirty-six hours of work during her probationary period, the vast majority of which was undocumented. Because she does not draw the underlying facts into dispute, the Court may properly compare her conduct to that of other employees at the *prima facie* stage. In doing so, it becomes apparent that Kaufman has failed to make an initial showing that she was similarly situated to Nicole Turner, Melissa Reece, or Stephanie Roby.

(1) *Nicole Turner*

The details surrounding Nicole Turner, Kaufman's first potential comparator, are scant. During her deposition, Kaufman testified that a GE Team Lead named

"Theresa" called her shortly after her termination and told her that Turner had her probation extended, despite missing twice as much work as Kaufman. [DN 18-1 at 154-56, 236-38, 273.] GE says these assertions are incorrect, and Turner neither had absences during her probationary period nor had that period extended. [DN 20 at 2.]

More importantly, though, the statements made by Theresa and repeated by Kaufman are inadmissible hearsay. On summary judgment, the Court may not consider hearsay evidence. *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). Kaufman presents no other evidence regarding Nicole Turner other than Theresa's statements, so in order for the Court to consider Turner a similarly situated employee, Kaufman must introduce sufficient evidence showing that the statements fall under a hearsay exception or exclusion. *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 817 F.3d 934, 944 (6th Cir. 2016). Kaufman argues that Theresa's statements are admissible as non-hearsay under Federal Rule of Evidence 801(d)(2)(D). That rule provides, in pertinent part, that a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). The Sixth Circuit has clarified that "Rule 801(d)(2)(D) is designed to bind the employer where one of its managerial employees makes a statement within the scope of the employee's duties as a manager." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 722 (6th Cir. 2006) (citations omitted).

Kaufman has not met her burden to show that Theresa's statements fall under Rule 801(d)(2)(D). She cannot recall Theresa's last name, *see* [DN 18-1 at 153], nor has she provided any evidence to substantiate Theresa's statements. Moreover, Kaufman acknowledges that "Team Lead" employees are union members. [DN 18-1 at 260-61.] As such, case law supports the notion that Theresa, whoever she may be, did not speak on GE's behalf when she called Kaufman and told her a Caucasian employee was given more favorable treatment. *See Bailey v. USF Holland, Inc.*, 444 F. Supp. 2d 831, 848 (M.D. Tenn. 2006) (Title VII plaintiff could not testify to hearsay statements made by a union representative regarding the representative's conversation with a manager); *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 744 (2d Cir. 2014) (in discrimination case, union representative's statements did not qualify as admissions by employer). Because Kaufman offers no evidence regarding Nicole Turner's employment at GE beyond Theresa's hearsay statements, she may not rely upon Nicole Turner as a similarly-situated employee.

(2) *Melissa Reece and Stephanie Roby*

GE argues that Kaufman is not similarly situated to either Melissa Reece or Stephanie Roby, her other proposed comparators, because Kaufman's absences were both more excessive and undocumented. As detailed above, Reece and Roby each missed about twenty-one hours of work during their respective probationary periods.[2] *See* [DN 18-13 at 1; DN 20 at 2; DN 18-16 at 1.] Each employee

---

[2] Kaufman claims in her briefing that Reece missed 68.2 hours, not twenty-one hours as GE claims. [DN 18 at 12.] However, as explained Lewis's declaration, Kaufman's calculation incorrectly

provided documentation for all of her absences. [DN 20 at 2, 4-5.] Additionally, a portion of Roby's absences was excused. [DN 18-16 at 1; DN 20 at 4-5.] Both Reece and Roby had their probation extended for one month, and were subsequently kept on at GE. *See* [DN 18-10 at 1; DN 18-11 at 1.]

The Sixth Circuit directs "that to be deemed 'similarly-situated' in the disciplinary context, 'the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). However, "[t]he nonprotected employee need not be identical in every way in order to be a proper comparator. Instead, the plaintiff must show that the comparator is similarly situated in all relevant aspects and has engaged in acts of comparable seriousness." *Tennial*, 840 F.3d at 304 (citing *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012)).

Here, Kaufman, Reece, and Roby were hired within a week of each other, were working in the same department, and were subject to the same attendance policy. *See* [DN 18-19.] Thus, the relevant inquiry at this stage is whether Kaufman has made a *prima facie* showing that her conduct was sufficiently similar

---

includes hours when the factory was closed. [DN 20 at 2.] On summary judgment, the Court need not adopt a version of facts that is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Thomas v. City of Lansing*, 410 F. App'x 922, 931 (6th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

to Reece and Roby's conduct, such that the three employees may be considered similarly situated. During her six-month probationary period, Kaufman missed thirty-six hours of work. [DN 13-4 at 2.] All but eight hours were undocumented, and none were excused. *See* [*id.*; DN 20 at 4.] In contrast, Reece and Roby each missed approximately twenty-one hours during their probationary periods. [DN 20 at 2; DN 18-16 at 1.] Both employees provided documentation for all their absences, and at least four hours of Roby's absences were excused. [DN 20 at 2, 4-5; DN 18-16 at 1.] On these facts, this Court cannot say that Kaufman was similarly situated to either Reece or Roby.

This conclusion might be different if the only difference between Kaufman and Reece and Roby was the number of hours missed – after all, Kaufman missed only two days more than Reece and Roby over the course of six months. Even the cases cited by GE suggest that something more than just the amount of absences is necessary to distinguish two employees who are similarly situated in all other respects. *See Barlow v. Triden Const. Supply, Inc.*, No. 3:01-CV-271-H, 2002 WL 927422, at *5 (W.D. Ky. Apr. 26, 2002) (plaintiff's proposed comparators had fewer absences, had accrued leave, and were subject to different leave rules); *Hansbrough v. Titlemax of Tenn., Inc.*, 977 F. Supp. 2d 859, 869 (W.D. Tenn. 2013) (plaintiff had attendance issues and violated other company polices); *Richardson v. Rock City Mech. Co., LLC*, No. 3:09-0092, 2010 WL 2650225, at *11 (M.D. Tenn. June 28, 2010) (proposed comparator's time off was approved).

But here, there is indeed something else that sets Kaufman apart. Unlike Reece and Roby, twenty-eight of Kaufman's thirty-six missed hours was unaccounted for. GE's attendance policy makes clear that supervisors take into account an employee's reasons for missing work when deciding what corrective action needs to be taken. *See* [DN 18-19 at 2.] What's more, GE's letters to Kaufman, Reece, and Roby demonstrate that GE distinguishes between documented and undocumented absences. GE's letter to Kaufman states, "Since you started your employment at GE on April 13, 2012, our records show that you have been absent, tardy or have left early on more than one occasion. This letter is to inform you that *because you have not provided satisfactory reasons or documentation for your absences*, your employment will be terminated effective today, 10/12/12." [DN 18-7 at 1 (emphasis added).] GE's letters to Reece and Roby are identical to each other, but different than Kaufman's: "Since you started your employment at GE on April 5, 2012, our records show that you have been absent and/or tardy on more than one occasion. This letter is to inform you that it has been determined that we will be extending your probationary period one month." [DN 18-10 at 1; DN 18-11 at 1.]

From these letters, it is apparent that Kaufman was terminated not only because she missed thirty-six hours of work during her six-month probation, but also because she did "not provide[] satisfactory reasons or documentation" for over three-fourths of those hours. [DN 18-7 at 1.] This clearly distinguishes her from Reece and Roby, who accounted for the entirety of the twenty-one hours they

15

missed.   Again, to make out the fourth element of her *prima facie* case, Kaufman must show that Reece and Roby "[are] similarly situated in all relevant aspects and ha[ve] engaged in acts of comparable seriousness." *Tennial* 840 F.3d at 304 (citation omitted).   Kaufman's failure to document the overwhelming majority of her absences is certainly relevant to the present inquiry, which centers upon the reason GE terminated her employment.   And in this relevant aspect, Kaufman is simply not comparable to Reece or Roby.

## C. Pretext

Kaufman's failure to establish that she was "treated differently than similarly situated nonminority employees" is fatal to her discrimination claim. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016) (citation omitted).   Under the burden-shifting framework of *McDonnell Douglas*, the Court need not proceed any further.   However, even assuming Kaufman had established all four elements of her *prima facia* disparate treatment claim, GE would still be entitled to summary judgment.   After the plaintiff satisfies her burden at the *prima facie* stage, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action.   *Hollins v. Atl. Co.*, 188 F.3d 652, 658 (6th Cir. 1999).   Here, GE has done just that, explaining that it terminated Kaufman's employment because of her excessive, undocumented absences during her six-month probationary period.

The burden now shifts back to Kaufman to demonstrate GE's proffered reason is merely pretext for unlawful discrimination.   *Id.* Kaufman may

demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Elgabi v. Toledo Area Reg'l Transit Auth.*, 228 F. App'x 537, 540 (6th Cir. 2007) (quoting *Wexler v. White's Fine Furniture,* 317 F.3d 564, 576 (en banc) (6th Cir. 2003)).   As noted above, "evidence '[e]specially relevant to such a showing' is proof that an employer treated similarly situated Caucasian employees differently when they engaged in acts of comparable seriousness."   *Tennial*, 840 F.3d at 303 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)); *see also Bush v. American Honda Motor Co., Inc.*, 227 F. Supp. 2d 780, 792-93 (S.D. Ohio 2002) (explaining that evidence of differential treatment goes to the second and third methods of showing pretext).

In Part III.B.2 of this Opinion, the Court explained how Kaufman's failure to provide documentation for the bulk of her absences prevents her from making a *prima facie* showing that Melissa Reece and Stephanie Roby were similarly situated but treated differently.   For this same reason, Kaufman cannot show her firing was pretextual by pointing to GE's differential treatment of Reece and Roby.   GE did indeed treat Kaufman differently, but it had good reason for doing so – Reece and Roby explained why they were absent, and Kaufman did not.   Aside from GE's justifiably different treatment, Kaufman brings forth no other evidence of pretext. Her discrimination claim fails at the final step of the *McDonnell Douglas* analysis as well.

## IV. Conclusion

In assessing a plaintiff's claim of employment discrimination, "[c]ourts are not intended to act as 'super personnel departments to second guess an employer's facially legitimate business decisions.'" *Adams v. Tenn. Dep't of Fin. & Admin.*, 179 F. App'x 266, 272 (6th Cir. 2006) (quoting *Bush v. Am. Honda Motor Co.,* 227 F. Supp. 2d 780, 797 (S.D. Ohio 2002)). Even viewing the evidence in the light most favorable to Kaufman, she has not met her burden to show she was treated differently than any similarly situated employees, or that GE's stated reasons for terminating her employment were pretextual. Accordingly, GE is entitled to summary judgment.

An appropriate order and judgment will follow.

CC: Counsel of Record